IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

DEBBIE LEE                                                    PLAINTIFF

V.                          NO. 4:20-CV-197 (BSM)

LIGHTHOUSE COMPLIANCE SOLUTIONS, INC.              DEFENDANTS
and DAVID ANKENY

**BRIEF IN SUPPORT OF MOTION TO DISMISS
OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

     Defendants Lighthouse Compliance Solutions, Inc. (Lighthouse or Company) and David

Ankeny (Ankeny), by and through their undersigned counsel, CROSS, GUNTER, WITHERSPOON &

GALCHUS, P.C., and for their Brief in Support of their Motion to Dismiss or, in the Alternative,

Motion for Summary Judgment, respectfully request that the Court **dismiss** Plaintiff's Complaint

with prejudice.

                         Respectfully Submitted,

                         Abtin Mehdizadegan, Ark. Bar No. 201313
                         Alexander D. Clark, Ark. Bar No. 2017112
                         **CROSS, GUNTER, WITHERSPOON
                           & GALCHUS, P.C.**
                         500 President Clinton Avenue, Suite 200
                         Little Rock, Arkansas 72201
                         Phone: (501) 371-9999
                         Fax: (501) 371-0035
                         Email: abtin@cgwg.com
                                     aclark@cgwg.com

                         **ATTORNEYS FOR DEFENDANTS**

247830

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ............................................................................. TOC i

**EXHIBIT INDEX** ............................................................................................ TOA i

**I.** **INTRODUCTION** ................................................................................... 1

**II.** **BACKGROUND AND MATERIAL UNCONTESTED FACTS** ..................... 2

**III.** **LAW AND ARGUMENT** .......................................................................... 9

    **A. Plaintiff's Complaint Must Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted Under Rule 12(b)(6) of the Federal Rules of Civil Procedure.** ..............................................................................10

        1. Plaintiff's Position as Director of Applicant Harbor Satisfies the FLSA's Administrative Exemption. ................................................................... 12

        2. Plaintiff's Complaint Fails to State a Claim Upon Which Relief Can be Granted Because She Released and Waived Her Right to Bring a Claim under Either the FLSA or the AMWA in Exchange for Valuable Consideration. .............................. 15

    **B. The Court, Pursuant to Rule 12(d), Should Alternatively Analyze this Motion Under Rule 56 of the Federal Rules of Civil Procedure and Properly Hold that Defendants are Entitled to Judgment as a Matter of Law.** .....................................17

        1. Pursuant to the Standard Set Forth Under Rule 56 of the Federal Rules of Civil Procedure, Defendants are Entitled to Judgment as a Matter of Law......................... 17

        2. The Undisputed Facts Clearly and Conclusively Demonstrate that Plaintiff is Not Entitled to Overtime Compensation Because She was Properly Classified as an Exempt Administrative Employee. ........................................................... 19

**IV.** **REQUEST FOR STAY** ........................................................................... 28

**V.** **CONCLUSION** ...................................................................................... 28

## TABLE OF AUTHORITIES

### CASES

*Supreme Court*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................................ 17, 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................... 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................ 10, 15

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ......................................................................... 18

*Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134 (2018) .................................................... 19

*Erickson v. Pardus*, 551 U.S. 89 (2007) .................................................................................. 10

*Landis v. North American Co.*, 299 U.S. 248 (1936) ................................................................. 27

*Neitzke v. Williams*, 490 U.S. 319 (1989) .................................................................................. 9

*Courts of Appeal*

*Andrews v. Fowler*, 98 F.3d 1069 (8th Cir. 1996) ..................................................................... 17

*Berg v. Norand Corp.*, 169 F.3d 1140 (8th Cir. 1999) .............................................................. 18

*Copeland v. ABB, Inc.*, 521 F.3d 1010 (8th Cir. 2008) ............................................................. 16

*Depositors Ins. Co. v. Wal-Mart Stores, Inc.*, 506 F.3d 1092 (8th Cir. 2007) .......................... 18

*Diesel Machinery, Inc. v. B.R. Lee Industries, Inc.*, 418 F.3d 820 (8th Cir. 2005) ..................... 18

*Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008) ................................................... 16

*Hungate v. U.S.*, 626 F.2d 60 (8th Cir. 1980) ............................................................................ 9

*Lynn's Food Stores, Inc. v. U.S. By and Through U.S. Dept. of Lab., Employment Standards Admin., Wages and Hour Div.*, 679 F.2d 1350 (11th Cir. 1982) ........................................ 16, 17

*Krenick v. County of Le Sueur*, 47 F.3d 953 (8th Cir. 1995) ....................................................... 18

*Levy v. Ohl*, 477 F.3d 988 (8th Cir. 2007) ................................................................................ 11

*Mattes v. ABC Plastics, Inc.*, 323 F.3d 695 (8th Cir. 2003) ................................................. 11, 14

*Pope v. ESA Services, Inc.*, 406 F.3d 1001 (8th Cir. 2005) ........................................................ 18

*Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) ................................................. 18

*Young v. City of St. Charles, Missouri*, 244 F.3d 623 (8th Cir. 2001)............................................ 9

**District Courts**

*Aubrey v. Zamam, LLC*, 2017 WL 5180427 (E.D. Ark. Nov. 8, 2017)........................................ 11

*Carter v. Primary Home Care of Hot Springs, Inc.*, 2015 WL 11120564 (W.D. Ark. May 14, 2015).................................................................................................................................. 11

*Clark v. Northland Grp., Inc.*, 2014 WL 3828218 (D. Minn. Aug. 4, 2014) ............................... 10

*Fenlon v. Nickelback Transp., Inc.*, 2019 WL 6137457 (D.N.D. Nov. 19, 2019)........................ 17

*Lyons v. ConAgra Foods Packaged Foods, LLC*, No. 4:12CV00245, 2013 WL 12304019 (Oct. 31, 2013)........................................................................................................................... 16

*Vaughn v. Wells Fargo Bank, N.A.*, 2017 WL 1498069 (W.D. Ark. Apr. 25, 2017) ............. 10, 15

## STATUTES

ARK. CODE ANN. § 11–4–218 ...................................................................................................... 11

## RULES

FED. R. CIV. P. 8 ........................................................................................................................... 8

FED. R. CIV. P. 12 ........................................................................... 1, 2, 9, 10, 15, 17, 18, 27, 28

FED. R. CIV. P. 56 ................................................................................................ 2, 18, 27, 28

## REGULATIONS

29 C.F.R. § 541.200 ........................................................................................... 7, 12, 19, 20–22

29 C.F.R. § 541.201 ..................................................................................................... 12, 20–21

29 C.F.R. § 541.202 ......................................................................................... 9, 12–13, 22, 26

ARK. ADMIN. CODE § 010.14.1-112 ............................................................................................ 16

## TREATISES

WRIGHT & MILLER, *Conversion of a Rule 12(b)(6) Motion Into a Summary Judgment Motion*, 5C FED. PRAC. & PROC. CIV. § 1366 (3d ed. Aug. 2019 Update).................................................... 9

*W&H Div. Field Op. Handbook*, U.S. Dep't of Labor, at § 22(c)(02), *available at* https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/FOH_Ch22.pdf (last accessed Feb. 15, 2020)....................................................................................................................... 27

## EXHIBIT INDEX

**Exhibit 1**      Affidavit of David Ankeny

**Exhibit 2**      Plaintiff's Resumé

**Exhibit 3**      LinkedIn Account Webpage of Plaintiff

**Exhibit 4**      Declaration of Garth Robinson

**Exhibit 5**      Payroll Records

**Exhibit 6**      Declaration of Lorey Phillips

**Exhibit 7**      Collection of Email Correspondence Regarding Payment of SPIFF

**Exhibit 8**      Plaintiff's Petition for Appeal to the Appeal Tribunal

**Exhibit 9**      Plaintiff's Job Description

**Exhibit 10**     Collection of Email Correspondence Regarding Essential Functions of Plaintiff's Job

**Exhibit 11**     Collection of Email Correspondence Regarding Applicant Harbor

**Exhibit 12**     Collection of Email Correspondence Regarding Legal Compliance Advice

**Exhibit 13**     Declaration of Greta Gay

**Exhibit 14**     Collection of Email Correspondence Regarding Human Resource Guidance

**Exhibit 15**     Collection of Email Correspondence Regarding Third Party Communications

**Exhibit 16**     Applicant Harbor System Services Agreement

**Exhibit 17**     Collection of Email Correspondence Regarding Contracting Authority

**Exhibit 18**     Collection of Email Correspondence Regarding Price Setting

**Exhibit 19**     Collection of Email Correspondence Regarding Marketing

**Exhibit 20**     Certification Invoices

**Exhibit 21**     July 11, 2018 Email Correspondence

**Exhibit 22**     Lighthouse Applicant Harbor Webpage

**Exhibit 23**    Confidential Settlement Agreement

**Exhibit 24**    Plaintiff's Business Card

# I.    INTRODUCTION

Plaintiff Debbie Lee, until she was terminated for, *inter alia*, insubordination, frequent tardiness and absenteeism, and use of a vaporizer smoking device in her office, along with her exceedingly poor work performance, served as Director of Applicant Harbor,[1] Lighthouse's Applicant Tracking System (ATS), which is a web-based hiring, application, and data management system that Lighthouse's clients use to maintain compliance with certain enhanced governmental guidelines and regulations, including those promulgated by the Equal Employment Opportunity Commission (EEOC) and Office of Federal Contract Compliance Programs (OFCCP), unique to federal contractors. For the entire duration of her employment, Plaintiff was properly classified and compensated as an "exempt" employee for wage and hour purposes under the Fair Labor Standards Act's (FLSA) "administrative" exemption. Specifically, Plaintiff was compensated on a salary basis of over $61,000 annually, and she performed non-manual work that required independent judgment and discretion pertaining to matters of particular significance to the Company.

Nevertheless, apparently frustrated by her termination, Plaintiff pursues this frivolous litigation with two specious and identical causes of action—under the FLSA and the Arkansas Minimum Wage Act (AMWA), *Dkt. 1*, ¶¶ 1, 38, 46—for alleged "misclassification." Beyond flat legal assertions that fail to plausibly state a claim, **nothing** in the factual predicate of Plaintiff's Complaint supports her feigned and half-hearted allegations of misclassification. For these reasons

---

[1] In exhibits throughout this Brief, Plaintiff refers to her position title in various forms, including "Operations Director, Applicant Harbor," "Talent Acquisition Specialist & Director of ATS [Applicant Tracking Systems] Operations," and "Director, Applicant Harbor Operations." These position titles reflect the same position referred to herein as Director of Applicant Harbor.

alone, Plaintiff's Complaint should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

While the Court can properly dismiss Plaintiff's Complaint without considering matters beyond the four-corners of the Complaint, this Court can and should look beyond Plaintiff's allegations and consider the substance of Defendants' comprehensive evidentiary submissions by alternatively treating this responsive pleading as a Motion for Summary Judgment pursuant to Rule 12(d) and Rule 56(c). The ample and incontrovertible evidence submitted for the Court's review leads to one inescapable conclusion: there is no universe of possibilities under which Plaintiff may succeed on her misclassification claims.

Accordingly, because Defendants are entitled to judgment as a matter of law, and because the interests of judicial economy are best served by an early resolution of her terminally-deficient claims, the Court should dismiss Plaintiff's Complaint under Rule 12(b)(6) as it fails to state a claim, or alternatively under Rules 12(d) and 56(c) because the uncontested facts demonstrate conclusively that Defendants are entitled to judgment as a matter of law.

## II.     BACKGROUND AND MATERIAL UNCONTESTED FACTS

Plaintiff was hired to work for Lighthouse as its Director of Applicant Harbor in or about May 2006.[2] **Exhibit 1**, *Affidavit of D. Ankeny*, at ¶ 8; *see also* **Exhibit 2**, *Plaintiff's Résumé*; **Exhibit 3**, *LinkedIn Account Webpage of Plaintiff*.[3] In this capacity, Plaintiff originally reported directly, and solely, to Ankeny, Lighthouse's President. *Ankeny Aff. (Ex. 1)* at ¶ 6. More recently,

---

[2] Plaintiff LinkedIn Webpage provides that her employment began in August 2005. *LinkedIn Webpage (Ex. 3)*. However, upon information and belief, Plaintiff's employment with Lighthouse began in 2006, *see Ankeny Aff. (Ex. 1)*, ¶ 6; *Plaintiff's Résumé (Ex. 2)*.

[3] A copy of Plaintiff's LinkedIn Account is provided for the Court's convenience, but is also publically available at https://www.linkedin.com/in/debbielynnlee/.

Ankeny instructed Plaintiff to report to Garth Robinson, Chief Information Officer/Chief Operating Officer for Lighthouse, in the event Ankeny was unavailable. *Id.* at ¶ 6; **Exhibit 4**, *Declaration of Garth Robinson,* ¶ 4.

In exchange for her employment, Plaintiff was paid on a salary basis at an annual rate of approximately $61,800.00. *Ankeny Aff. (Ex. 1)* at ¶ 7; **Exhibit 5,** *Payroll Records*; **Exhibit 6**, *Declaration of Lorey Phillips,* ¶¶ 5–6; *Dkt. 1*, ¶ 8, 22. In addition, Plaintiff was eligible to receive additional bonuses: a periodic SPIFF (Sales Performance Incentive Funding Formula) bonus for opening new Applicant Harbor requisitions, and a profit-sharing bonus. *Ankeny Aff. (Ex. 1)* ¶ 8; *Payroll Records (Ex. 5),* pp. 4, 7, 58, 61; **Exhibit 7**, *Collection of Email Correspondence Requesting Payment of SPIFF.*

After her termination and shortly before she filed her Complaint, Plaintiff acknowledged that the duties of her position as Director of Applicant Harbor:

> was to manage the operations of the Applicant Tracking System (ATS), Lighthouse owned. I was the sole person in the company that knew how the system worked, was managed, and as such, **I was the sole interface with clients** (users) of the system. The ATS system was the product and there was no product delivery to the customers without me. **I was an exempt, salaried employee** and interfaced with clients to help them post their jobs and troubleshoot the system for them beyond the standard workday, from the office or from home . . . I consistently received positive feedback from clients for my **professional guidance**, my timelines, and my willingness to provide assistance to them . . . Over the **years I sought to expand my duties by taking on additional projects with the intention of expanding our customer base by professional networking, developing training and seminars, and recommending improvements to the actual system**. I also took the initiative to become professionally certified in (fill in the blank here with your certification) [sic].

**Exhibit 8**, *Plaintiff's Petition for Appeal to Appeal Tribunal*, p. 2; *see also* **Exhibit 9**, *Plaintiff's Job Description* (stating that Plaintiff's primary function was to "manage daily operations for

Applicant Harbor ATS."). The essential functions of her position included, *inter alia*, management of Applicant Harbor ATS websites, including providing client-specific updates based on the promulgation of new regulations; development of new business by providing online demonstrations and explaining the compliance-related benefits of using Applicant Harbor; and managing and troubleshooting Third Party Logs, including integration with Laborchex. *Plaintiff's Job Description (Ex. 9)*. In this respect, Plaintiff was a "consultant" to Lighthouse's clients, *see* **Exhibit 10**, *Collection of Email Correspondence Regarding Essential Functions of Plaintiff's Job,* p. 4, providing "guidance and support to clients in their recruiting efforts in compliance with OFCCP and EEOC guidelines." *Plaintiff's Resumé (Ex. 2)*.

On a more granular level, Plaintiff also exercised discretion and independent judgment with respect to significant matters related to Lighthouse's clients by:

- Advising clients in their use of Applicant Harbor, including with respect to technical questions pertaining to the program, **Exhibit 11**, *Collection of Email Correspondence Regarding Applicant Harbor*, pp.1–2, 4, 10–18, 20–23, 26–28, 30–34, as well as offering guidance and suggestions to clients, using her independent judgment, in response to specific client inquiries about Applicant Harbor, for the purposes of maintaining compliance with OFCCP regulations, *id.*, at pp. 3, 6–10, 18–19, 21–26, 29-30;

- Providing regulatory guidance to clients, including compliance with relevant state and federal laws related to hiring and employment, **Exhibit 12**, *Collection of Email Correspondence Regarding Legal Compliance Advice*; *Ankeny Aff. (Ex. 1)*, ¶ 18; *Robinson Declr. (Ex. 4)*, ¶ 9; **Exhibit 13**, *Declaration of Greta Gay*, ¶ 9.

- Furnishing clients with human resource advice, **Exhibit 14**, *Collection of Email Correspondence Regarding Human Resource Guidance*; *Ankeny Aff. (Ex. 1),* ¶ 18; *Robinson Decl. (Ex. 4),* ¶ 9; *Gay Decl. (Ex. 13)*, ¶ 8, including how to reduce turnover, *Collection of Email Correspondence Regarding Human Resource Guidance.* at p. 5, editing content on a client's job application, *id.* at 6–21, providing "ideas about adding to [a client's] onboarding/orientation process," *id.* at 34–35, and even engaging in impromptu recruiting on behalf of a Lighthouse client, *id.* at 36;

- Communicating with online job boards on behalf of Lighthouse clients, **Exhibit 15**, *Collection of Email Correspondence Regarding Third Party Communications*, pp. 7, 8, 11–12; *Ankeny Aff. (Ex. 1)*, ¶ 19.

- Providing guidance to clients pertaining to posting requirements on state job boards, *id*. at pp. 1, 8, and delivering opinions and advice regarding online job boards in furtherance of her consulting role regarding OFCCP compliance, *id*. at pp. 2–7, 9-10;

- Exercising authority to obtain advice from outside counsel without prior approval from Ankeny to support clients' compliance with OFCCP regulations and to answer their inquiries regarding same, *Ankeny Aff. (Ex. 1)*, ¶ 22.

- Entering into contracts with clients on behalf of Lighthouse, **Exhibit 16**, *Applicant Harbor System Services Agreement*; **Exhibit 17**, *Collection of Email Correspondence Regarding Contracting Authority*; *see also Akeny Aff. (Ex. 1)*, ¶ 23; *Robinson Decl. (Ex. 4)*, ¶ 11; *Gay Decl. (Ex. 13)*, ¶ 10; and

- Setting prices for products and services related to Applicant Harbor, **Exhibit 18**, *Collection of Email Correspondence Regarding Price Setting*, including data storage fees, *id*. at p. 1, monitoring fees, *id*. at p. 2, and setting, waiving, and negotiating fees associated with the use of Applicant Harbor itself, *id*. at pp. 3–16; *see also Ankeny Aff. (Ex. 1)*, ¶ 24; *Robinson Decl. (Ex. 4)*, ¶ 12–14; *Gay Decl. (Ex. 13)*, ¶ 11–13.

In addition to the foregoing duties demonstrative of Plaintiff's exercise of discretion and independent judgment as to matters of significance with respect to Lighthouse and its clients relating specifically to Applicant Harbor, Plaintiff "sought to expand [her] duties by taking on additional projects with the intention of expanding [Lighthouse's] customer base[.]" *Petition for Appeal to Appeal Tribunal (Ex. 8)*, p. 2. In particular, Plaintiff exercised discretion and independent judgment as to matters of significance to Lighthouse by:

- Generally, assuming "responsib[ility] for LH [Lighthouse] and AH [Applicant Harbor] marketing efforts." **Exhibit 19**, *Collection of Email Correspondence Regarding Marketing,* p. 6, *accord id.* at 2 (". . . I'm head of marketing for our company and like to know where our leads are coming from."); *Ankeny Aff. (Ex. 1)*, ¶ 25; *Robinson Decl. (Ex. 4)*, ¶ 15; *Phillips Decl. (Ex. 6)*, ¶ 10; *Gay Decl. (Ex. 13)*, ¶ 14.

- Developing and/or conducting training and seminars, *Collection of Email Correspondence Regarding Marketing (Ex. 19),* p. 5 (evidencing Plaintiff was presenter of Applicant Harbor webinar); *Ankeny Aff. (Ex. 1),* ¶ 26; *Gay Decl. (Ex. 13),* ¶ 16;

- Engaging in professional networking, *Collection of Email Correspondence Regarding Marketing (Ex. 19),* pp. 7 (evidencing attendance at SHRM [Society for Human Resource Management] conference(s)); 10 (evidencing business development through contact at networking at NEARSHRM [Northeast Arkansas Society for Human Resource Management] meeting); *see also Ankeny Aff. (Ex. 1),* ¶ 27; *Gay Decl. (Ex. 13),* ¶ 17;

- Managing Lighthouse's online and print marketing, *Collection of Email Correspondence Regarding Marketing (Ex. 19),* pp. 1 (creation of company LinkedIn webpage); 6 (SHRM vendor listing); 8–9 (seeking Applicant Harbor's "integration" with LinkedIn's "new recruiting tool."); 14–19 (facilitating advertisement in HR Magazine); 20–23 (obtaining company listing on CAHRA [Central Arkansas Human Resource Association] website); 24 (sending human resource compliance alerts to clients); 25–26 (responsible for updating Lighthouse's website); *see also Akeny Aff. (Ex. 1),* ¶ 28; *Robinson Decl. (Ex. 13),* ¶ 16;

- Facilitating the redesign of Lighthouse's logo, *Collection of Email Correspondence Regarding Marketing (Ex. 19),* pp.11–13; *Ankeny Aff. (Ex. 1),* ¶ 29; *Robinson Decl. (Ex. 4),* ¶ 17;

- Drafting "[a]lerts on new Directives [sic] or changes from the DOL/OFCCP," *Collection of Email Correspondence Regarding Marketing (Ex. 19),* p. 27; *Ankeny Aff. (Ex. 1),* ¶ 30;

- Obtaining professional certifications, *id.* at *Petition for Appeal to the Appeal Tribunal (Ex. 8),* p. 2 ("I also took the initiative to become professionally certified . . ."); **Exhibit 20**, *Certification Invoices*; *Plaintiff's Resumé (Ex. 2)* ("***SHRM Talent Acquisition Specialty Credential Certification***"); *Ankeny Aff. (Ex. 1),* ¶ 27; *Robinson Decl. (Ex. 4),* ¶ 18; *Phillips Decl. (Ex. 6),* ¶ 8; and

- Drafting a security policy for Applicant Harbor, **Exhibit 21**, *July 11, 2018 Email Correspondence; Akeny Aff. (Ex. 1),* ¶ 31.

Plaintiff's conclusory allegation that she was "misclassified" as an exempt employee, *Dkt. 1,* ¶¶ 22, 38, 46, is contingent on the singular, and equally conclusory and vague allegation that

she "did not exercise independent judgment as to matters of significance in carrying out her duties," *Id.* at ¶ 28.[4] Plaintiff admits she was a "salaried employee," *Dkt. 1*, ¶ 8, 22, and she does not contest, nor can she, that she was compensated on a salary basis at a rate of at least $455 per week.[5] *Ankeny Aff. (Ex. 1),* ¶ 7; *Pay Records (Ex. 5); Phillips Decl. (Ex. 6),* ¶ 5–6. Further, Plaintiff implicitly admits that her primary duty was the "performance of office . . . work directly related to the management or general business operations" of Lighthouse and Lighthouse's clients, 29 C.F.R. § 541.200; *Dkt. 1,* ¶ 15 (citing to Lighthouse's website and admitting that Lighthouse "provides programs to ensure compliance with the Office of Federal Contractor Compliance Programs."); *Dkt. 1,* ¶¶ 24–25 (admitting Plaintiff worked in Lighthouse's "office" as the "director of [Lighthouse's] applicant tracking system."). Plaintiff's sole contention that she "did not exercise independent judgment as to matters of significance in carrying out her duties," *Id.* at ¶ 28, belies the overwhelming weight of evidence, *see* ARG 3–6 *supra*, and Plaintiff's very own opinion as to the nature of her employment, *see Petition for Appeal to Appeal Tribunal (Ex. 8),* p. 2 ("I [Plaintiff] was an exempt, salaried employee").

Indeed, Applicant Harbor is a uniquely complex and intertwined combination of product and service—a computer program that "efficiently manages candidate data" to "ensure compliance with employment regulations" and to "hire the best talent," integrated with Plaintiff's

---

[4] Plaintiff also vaguely alleges that she "did not have the authority to hire or fire," and "was not asked to provide input as to which employees should be hired or fired." *Dkt. 1,* ¶¶ 26–27. These allegations are immaterial as Defendants do not contend Plaintiff was classified as exempt under the FLSA's executive exemption.

[5] On January 1, 2020, the Department of Labor's Final Rule, *Defining and Delimiting the Executive, Administrative, Professional, Outside Sales and Computer Employees*, became effective. *See* 84 FR 51230, 51306 (Sept. 27, 2019). Prior to January 1, 2020, the Department of Labor enforced the 2004 part 541 regulations, including the $455 per week standard salary level. Dept. of Lab., Wage & Hour Div., Fact Sheet #17: Exemption for Administrative Employees Under the Fair Labor Standards Act (FLSA) (Revised Sept. 2019).

personalization and guidance, including in the functional areas of human resources and regulatory compliance,  in order to "address the unique needs of [a client's] organization." **Exhibit 22**, *Lighthouse Applicant Harbor Webpage[6]; see also Plaintiff's Resumé (Ex. 2); Petition for Appeal to the Appeal Tribunal (Ex. 8),* p. 2; *Plaintiff's Job Description (Ex. 9); Collection of Emails Regarding Plaintiff's Essential Functions of Her Job (Ex. 10)*, pp. 3–4*; Collection of Email Correspondence Regarding Legal Compliance Advice (Ex. 12); Collection of Email Correspondence Regarding Human Resource Guidance (Ex. 14).*  Serving as Director of Applicant Harbor not only required Plaintiff to exercise discretion and judgment as to Lighthouse's clients' business, her management over a program that was integral to Lighthouse's business operations necessitated Plaintiff's exercise of discretion and independent judgment with respect to Lighthouse's operations on a daily basis. *See Ankeny Aff. (Ex. 1), ¶ 35*; *Robinson Decl. (Ex. 4), ¶ 19–20*; *Phillips Decl. (Ex. 6), ¶ 13*; *Gay Decl. (Ex. 13), ¶ 18; Applicant Harbor Contract (Ex. 16)*; *Collection of Emails Regarding Price Setting (Ex. 18).*

Likewise, Plaintiff's responsibilities in the functional area of marketing for Lighthouse are quintessentially "administrative" duties. She described herself as the "head of marketing," *Collection of Email Correspondence Regarding Marketing (Ex. 19),* p. 2, and demonstrated nearly unchecked authority in tailoring Lighthouse's marketing efforts, including making decisions regarding the purchase of online and print advertisements, the re-design of Lighthouse's logo, and conducting trainings and seminars. *Collection of Email Correspondence Regarding Marketing (Ex. 19)*, pp. 1–2, 5–6, 8–9, 11–13, 14–19, 20–26; *see also Ankeny Aff. (Ex. 1), ¶¶ 25–33*; *Robinson*

---

[6] A copy of Lighthouse's Applicant Harbor webpage, Exhibit 22, is provided for the convenience of the Court. Lighthouse's website is publicly accessible at is also available at https://www.lighthousecompliance.com/; and the Applicant Harbor webpage in particular is accessible at https://www.lighthousecompliance.com/products/applicant-harbor.

*Decl. (Ex. 4), ¶¶* 15–18, 20. She made independent marketing decisions free from direct supervision formulating marketing procedures and efforts of Lighthouse. *See id.*; 29 C.F.R. § 541.202(c).

Against these incontrovertible facts, Plaintiff's misclassification claims are wholly unfounded and, consequently, her Complaint must be dismissed as a matter of law.

## III.   LAW AND ARGUMENT

The speedy and efficient administration of justice requires that claims lacking merit be disposed of at the first appropriate opportunity. *Orlando v. Alamo*, 646 F.2d 1288, 1289 (8th Cir. 1981) (citing *Hungate v. U.S.*, 626 F.2d 60, 62 (8th Cir. 1980)). Dismissal under Rule 12 serves to eliminate actions that are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity. *Young v. City of St. Charles, Missouri*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989)).

This Motion presents the Court with two avenues through which to dispose of Plaintiff's Complaint in order to secure the speedy and efficient administration of justice. The Court's first opportunity to dismiss this litigation arises under Rule 12(b)(6) of the Federal Rules of Civil Procedure because the Complaint fails to state a claim upon which relief can be granted. As discussed in Section III(A) *infra*, there is simply no factual content in Plaintiff's Complaint to support her claims of misclassification. Alternatively, because Defendants' evidentiary submissions are comprehensive and "enable a rational determination," this Court—under Rule 12(d) and as explained more fully in Section III(B) *infra*—should convert this Motion into one for summary judgment and dismiss Plaintiff's Complaint because there are no material facts in genuine dispute and because Defendants are entitled to judgment as a matter of law. WRIGHT & MILLER, *Conversion of a Rule 12(b)(6) Motion Into a Summary Judgment Motion*, 5C FED. PRAC.

& Proc. Civ. § 1366 (3d ed. Aug. 2019 Update). Under either basis, Plaintiff's claims cannot survive this Court's reasoned scrutiny.

A.     **Plaintiff's Complaint Must Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted Under Rule 12(b)(6) of the Federal Rules of Civil Procedure.**

The Complaint must be dismissed because it lacks the requisite factual quantum necessary to survive dismissal under Rule 12(b)(6). Rule 8 requires each Complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is to "give the defendant[s] fair notice of what the . . . claim is **and** the grounds upon which it rests." *Vaughn v. Wells Fargo Bank, N.A.*, 2017 WL 1498069, at *2 (W.D. Ark. Apr. 25, 2017) (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (emphasis added). Therefore, while courts accept *factual* allegations as true under Rule 12(b)(6)—with only *reasonable* inferences drawn in Plaintiff's favor—the Complaint, at a minimum, "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* In other words, Rule 8's pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.*

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* (quotations and citations omitted). Accordingly, the Court should dispense with wholly conclusory allegations or legal conclusions drawn from the facts alleged. *Clark v. Northland Grp., Inc.*, 2014 WL 3828218, at *1 (D. Minn. Aug. 4, 2014) (citations omitted). Importantly, when considering a motion to dismiss, the Court ordinarily does not consider matters

outside the pleadings. *Id.* (citing FED. R. CIV. P. 12(d)). The Court may, however, consider exhibits attached to the complaint and documents that are necessarily embraced by the pleadings, and may also consider public records. *Id.* (citing *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003), and *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007)).

Here, Plaintiff's Complaint simply fails to state facts that plausibly suggest a violation of law. The grand sum of Plaintiff's factual allegations in support of her misclassification claims are as follows: (1) she was classified and paid "as a salaried employee [] exempt from the overtime requirements of the FLSA,"[7] *Dkt. 1*, at ¶¶ 8, 22; (2) as "director of [Lighthouse's] applicant tracking system," she was "responsible for answering client questions, training users to use [Lighthouse's] software, and updating job postings," *id.* at ¶ 25; (3) she "did not have authority to hire or fire other employees," *id.* at ¶ 26; (4) "was not asked to provide input as to which employees should be hired or fired," *id.* at ¶ 27; and (5) she "did not exercise independent judgment as to matters of significance in carrying out her duties," *id.* at ¶ 28. The first, third, and fourth allegations are undisputed. The second allegation—while true in part—is a gross oversimplification of the nature of her job. The last allegation—while untrue—is a statement of law lazily adorned as fact. These allegations do not present any basis upon which to proceed with this litigation. Specifically, Section 13(a)(1) of the FLSA exempts individuals employed in a "bona fide executive, administrative, or professional capacity" from the Act's overtime requirements. As discussed

---

[7] While not explicitly stated in her factual allegations, Plaintiff presumably contends that she was classified as a salaried employee exempt from the AMWA as well as the FLSA, *see Dkt. 1*, ¶ 46. For purposes of this Motion, the requirements of the FLSA and the AMWA are identical. *Aubrey v. Zamam, LLC*, 2017 WL 5180427 (E.D. Ark. Nov. 8, 2017); *Carter v. Primary Home Care of Hot Springs, Inc.*, 2015 WL 11120564 at *1 (W.D. Ark. May 14, 2015); ARK. CODE ANN. § 11–4–218(f).

below, Plaintiff's employment as Lighthouse's Director of Applicant Harbor fits squarely within the administrative exemption.

### 1. Plaintiff's Position as Director of Applicant Harbor Satisfies the FLSA's Administrative Exemption.

In order to qualify as an exempt administrative employee, in addition to satisfying the salary basis test,[8] the employee's primary duty must include "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" as well as the "exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a). The phrase "directly related to the management or general business operations includes, but is not limited to, work in functional areas" such as human resources, legal and regulatory compliance, and similar activities. 29 C.F.R. § 541.201(b). An employee who acts as an adviser or consultant to her employer's clients or customers may be exempt. 29 C.F.R. § 541.201(c).

Here, Plaintiff's Complaint only takes exception with the last element of the administrative exemption[9]—whether Plaintiff's primary duty included exercising discretion and independent judgment with respect to matters of significance. *Dkt. 1*, at ¶ 28. In general, "the exercise of discretion and independent judgment involves the comparison and evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered."

---

[8] The minimum salary basis required to qualify for the executive and administrative exemptions rose to $684 per week on January 1, 2020. The change does not affect this lawsuit and Plaintiff's compensation exceeded this amount.

[9] Plaintiff alleges that she was the "director of [Lighthouse's] applicant tracking system, [and] was responsible for answering client questions, training users to use [Lighthouse's] software, and updating job postings." *Dkt. 1*, ¶ 25. However, she does not allege that such position and duties were not related to the management or business operations of Lighthouse, and more particularly, Lighthouse's clients. *See* 29 C.F.R. §§ 541.200(a)(2), 541.201(c).

29 C.F.R. § 541.202(a). Independent judgment "does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review." 29 C.F.R. § 541.202(c). The administrative exemption makes clear that the exemption still applies even where an administrative employee's "decisions or recommendations are reviewed at a higher level." 29 C.F.R. § 541.202(c). "The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action[,]" and "[t]he fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment." *Id.* This distinction is specifically illustrated in the text of the administrative exemption's regulations:

> For example, the policies formulated by the credit manager of a large corporation may be subject to review by higher company officials who may approve or disapprove these policies. The management consultant who has made a study of the operations of a business and who has drawn a proposed change in organization may have the plan reviewed or revised by superiors before it is submitted to the client.

*Id.*

In her Complaint, Plaintiff alleges that she was "director" of Lighthouse's "applicant tracking system," and that her job duties included "answering client questions" about, training clients on, and updating job posting for Applicant Harbor—the "applicant tracking system." *Dkt. 1*, ¶ 25. Citing to Lighthouse's website, she contends that the Company "provides programs to ensure compliance with the Office of Federal Contract Compliance Programs." *Dkt. 1*, ¶ 15. While true, Lighthouse's website goes on to describe its ATS, Applicant Harbor, as "a powerful hiring management solution" that "arms your company with a web-based hiring solution that efficiently manages candidate data, ensure[s] compliance with employment regulations[,] and helps you hire

the best talent." *Lighthouse Applicant Harbor Webpage (Ex. 22)*.[10] It provides clients with a "tremendous ability to customize [the client's] system to address the unique needs of [the client's] organization." *Id.* "Applicant Harbor is more than a Human Resource technology solution. The system is built around a best-practices hiring model designed by experts in human resources, affirmative action and employment law." *Id.* In fact, "Applicant Harbor Support Specialists create and manage job requisitions from open to close or open to hire," ensuring compliance with "EEOC and OFCCP guidelines and regulations." *Id.*

As the Director of Applicant Harbor, Plaintiff's answers to clients' inquiries, *see Dkt. 1*, ¶ 25, necessarily pertained to a wide array of topics that dealt with human resource management and legal compliance in the hiring process unique to federal contractors. *Lighthouse Applicant Harbor Webpage (Ex. 22)*. Similarly, given the "tremendous ability to customize" a client's Applicant Harbor webpage, *id.*, training clients and updating job postings, *Dkt. 1*, ¶ 25, requires the evaluation of specific content and exercising discretion on what matters to update on a client's job requisition and the manner in which a specific client is trained to use Applicant Harbor. Even a cursory review of Plaintiff's Complaint, in particular her position with Lighthouse and the duties she admits she performed, in the context of what Applicant Harbor is, makes her already-conclusory allegation that she "did not exercise independent judgment as to matters of significance in carrying out her duties," *Dkt. 1*, ¶ 28, even more implausible.

---

[10] For purposes of Defendants' Motion to Dismiss under FED. R. CIV. P. 12(b)(6), Lighthouse's website, and its content, should be viewed as an attachment to Plaintiff's Complaint and otherwise as a matter necessarily embraced by the pleadings. *See Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). Defendants attached the webpage as an exhibit to this Motion for the Court's convenience.

Notwithstanding the foregoing, Plaintiff still improperly relies on the conclusory allegation that she "did not exercise independent judgment as to matters of significance in carrying out her duties," *Dkt. 1*, ¶ 28, to support her entire claim of misclassification. *See Vaughn*, 2017 WL 1498069, at \*2 (citing *Iqbal*, 556 U.S. 662 (quoting *Twombly*, 550 U.S. at 569)) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"). Ultimately, the Complaint fails to contain a single factual allegation that, if true, would support her misclassification claims. For these reasons, Plaintiff's claims must be dismissed pursuant to Rule 12(b)(6).

**2.      Plaintiff's Complaint Fails to State a Claim Upon Which Relief Can be Granted Because She Released and Waived Her Right to Bring a Claim under Either the FLSA or the AMWA in Exchange for Valuable Consideration.**

On October 9, 2019, Plaintiff executed a Confidential Settlement Agreement (Agreement) with Lighthouse "and its related entities, agents, **officers**, employees, insurers, attorneys, and associates." **Exhibit 23**, *Confidential Settlement Agreement*. Therefore, the Agreement encompasses not only Lighthouse, but Ankeny as well, as an officer of Lighthouse. Under the terms of the Agreement, Lighthouse delivered to Plaintiff $10,300, less all lawful deductions—the equivalent of two months of Plaintiff's salary—in four equal installments occurring on Lighthouse's regularly-scheduled payroll dates, and forgave and canceled payment by Lee of amounts due and owing to Lighthouse in the amount of $8,150.97.[11] *Id.* at ¶ 1. In exchange for the foregoing consideration, Plaintiff

> forever release[d] and discharge[d] Lighthouse from any and all claims . . . and liabilities she ha[d] or may have had, as of the date of the execution of [the] Agreement, arising out of or related to her employment with or

---

[11] Lighthouse provided Plaintiff with a no-interest personal loan, which Plaintiff was re-paying to Lighthouse at a rate of $50 per month at the time of the debt's cancellation.

> separation from Lighthouse, including, but not limited to, claims arising under the Fair Labor Standards Act, . . . the Arkansas Minimum Wage Act, . . . and any other applicable Federal, State, or Local laws or regulations, . . . and/or claims for attorneys' fees and costs.

*Id.* at ¶ 2. Lee agreed that the "consideration she reciev[ed] pursuant to th[e] Agreement [was] in excess of anything that she [was] otherwise entitled." *Id.* Accordingly, Defendants contend that Plaintiff's FLSA and AMWA claims against Defendants should be dismissed.

Alternatively, in the event the Court decides that Plaintiff's FLSA claims could not be settled after her employment with Lighthouse concluded, Defendants contend that Plaintiff effectively waived her right to bring a claim under the AMWA. Defendants recognize that, ordinarily, FLSA rights are statutory and cannot be waived, *see Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008), and that, generally, the Court "may rely on the interpretations of the U.S. Department of Labor and federal precedent established under the Fair Labor Standards Act in interpreting and applying the provisions of [the Arkansas Minimum Wage Act] . . . except to the extent a different interpretation is clearly required." ARK. ADMIN. CODE § 010.14.1-112; *see also Lyons v. ConAgra Foods Packaged Foods, LLC*, No. 4:12CV00245, 2013 WL 12304019, at *3 (Oct. 31, 2013) ("The AMWA has been interpreted to impose the same overtime requirements as the FLSA."). At the same time, as Judge Susan Webber Wright observed in *McCartney v. Bailey & Thompson Tax and Accounting, P.A. LTD*, there is "no statutory mandate or Eighth Circuit decision that requires court approval of the parties' private settlement agreement." Case No. 4:14-CV-561, at *Dkt. 12* (E.D. Ark. Feb. 19, 2015) (citing *Fascio v. Madison Health & Rehab LLC*, No. 4:12CV00600 (E.D. Ark. June 30, 2014) (order finding arms' length compromise of FLSA claims for overtime did not require court approval)). There, despite the Parties' request for Judge Wright to approve a settlement agreement, the Court observed that "court approval of the parties' settlement agreement is not necessary[.]" *Id.* at P. 2.

Under Eleventh Circuit precedent, there are only two ways in which FLSA claims can be settled or compromised by: (1) under "section 216(c), . . . an employee who accepts [] payment [of unpaid wages] supervised by the Secretary [of Labor] thereby waives his right to bring suit for both the unpaid wages and for liquidated damages;" and (2) upon a "district court [] enter[ing] a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. U.S. By and Through U.S. Dept. of Lab., Employment Standards Admin., Wages and Hour Div.*, 679 F.2d 1350, 1353 (11th Cir. 1982). However, courts should only rely on interpretations of the FLSA in "interpreting and applying the **provisions of the [AMWA]**." ARK. ADMIN. CODE § 010.14.1-112. Thus, no rationale exists for the extrapolation of the interpretation of the FLSA to apply to the AMWA if there is no analogous provision in the AMWA. The provisions located in 29 C.F.R. § 216(b) and (c), *see Lynn's Food Stores*, 679 F.2d at 1353 (relying on sections 216(b) and 216(c) of the FLSA), or analogous provisions do not appear in the AMWA. Accordingly, any waiver analysis that the Court engages in with respect to the FLSA should not be extended to the AMWA. Therefore, in the event Plaintiff did not effectively waive all claims she has pleaded in her Complaint, she did effectively waive her AMWA claim. Plaintiff's AMWA claims should be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**B.**     **The Court, Pursuant to Rule 12(d), Should Alternatively Analyze this Motion Under Rule 56 of the Federal Rules of Civil Procedure and Properly Hold that Defendants are Entitled to Judgment as a Matter of Law.**

**1.**     **Pursuant to the Standard Set Forth Under Rule 56 of the Federal Rules of Civil Procedure, Defendants are Entitled to Judgment as a Matter of Law.**

Rule 12(d) instructs that the presentation of matters outside the pleadings results in the conversion of a Rule 12(b)(6) motion (and also a motion under Rule 12(c)) into a motion for summary judgment governed by Rule 56. FED. R. CIV. P. 12(d). Upon conversion to a motion

for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Fenlon v. Nickelback Transp., Inc.*, 2019 WL 6137457, at *2 (D.N.D. Nov. 19, 2019) (citations omitted). Here, because Defendants present comprehensive and incontrovertible evidence outside the pleadings in support of its alternative basis for relief, the Court should analyze this Motion under Rule 56 of the Federal Rules of Civil Procedure and grant summary judgment in Defendants' favor.

Summary judgment is proper and should be granted if no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); FED. R. CIV. P. 56(c); *Andrews v. Fowler*, 98 F.3d 1069, 1074 (8th Cir. 1996). "[T]he plain language of [Rule] 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case," and as such a failing necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Consequently, summary judgment should be granted where no reasonable jury could find in favor of the non-movant on any one fact essential to its claim. *Diesel Machinery, Inc. v. B.R. Lee Industries, Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (citations omitted); *Depositors Ins. Co. v. Wal-Mart Stores, Inc.*, 506 F.3d 1092, 1094 (8th Cir. 2007) (citing *Anderson*, 477 U.S. at 248).

Summary judgment, and by implication Rule 12(d), is a judicial instrument "properly regarded *not* as a disfavored procedural shortcut, but rather as an *integral* part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Torgerson v. City of Rochester,* 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (citations omitted) (citing *Celotex Corp*., 477 U.S. at 327) (emphasis added). "The motion for summary judgment can be a tool of great utility in removing factually insubstantial cases from crowded

dockets, freeing courts' trial time for those cases that really do raise genuine issues of material fact" and "need not be denied merely to satisfy a litigant's speculative hope of finding some evidence that might tend to support a complaint." *Krenick v. County of Le Sueur*, 47 F.3d 953, 959 (8th Cir. 1995) (internal citations omitted). Indeed, summary judgment "remains a useful pretrial tool to determine whether or not any case, including one alleging discrimination, merits a trial." *Pope v. ESA Services, Inc.*, 406 F.3d 1001, 1006 (8th Cir. 2005) (quoting *Berg v. Norand Corp.*, 169 F.3d 1140, 1144 (8th Cir. 1999)).

In considering the voluminous evidentiary record before the Court, there is no genuine issue as to any material fact regarding Plaintiff's classification as an exempt employee. Accordingly, and as discussed below, Defendants are entitled to judgment as a matter of law because Plaintiff's duties clearly fall within the ambit of the administrative exemption.

> **2.   The Undisputed Facts Clearly and Conclusively Demonstrate that Plaintiff is Not Entitled to Overtime Compensation Because She was Properly Classified as an Exempt Administrative Employee.**

To begin, Plaintiff recognized in her Petition for Appeal to the Arkansas Appeal Tribunal that she "was an exempt, salaried employee." *Petition for Appeal to the Appeals Tribunal (Ex. 8)*, p. 2. Her written statement to the state administrative agency notwithstanding, as summarized below, the overwhelming factual record substantiates Plaintiff's prior representation to the Appeal Tribunal. In particular, the undisputed facts demonstrate that Plaintiff, for the entire duration of her employment: (a) was compensated on a salary basis at a rate of not less than $455 per week, exclusive of board, lodging or other facilities; (b) her primary duty was office work directly related to the management or general business of her employer or her employer's customers; and (c) her primary duty included the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a). Importantly, despite prior court decisions to the contrary,

the Supreme Court recently rejected the principle that exemptions should be construed narrowly when interpreting the FLSA. "Because the FLSA gives no textual indication that its exemptions should be construed narrowly, there is no reason to give [them] anything other than a fair (rather than a narrow) interpretation." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018) (internal citation and quotation omitted).

### Factor 1 – Plaintiff Was Compensated on a Salary Basis in Excess of $23,660 Annually.

There is no dispute regarding the method and amount of Plaintiff's compensation. Plaintiff admits that she was a "salaried employee," *Dkt. 1, ¶¶ 8, 22; Petition for Appeal to the Appeals Tribunal (Ex. 8)*, p. 2, and, during the relevant time period, she was compensated at a rate of approximately $61,800 annually, exclusive of bonuses, *Ankeny Aff. (Ex. 1), ¶ 7; Pay Records (Ex. 5); Phillips Decl. (Ex. 6), ¶ 5*. Since February 1, 2017, Plaintiff has received the following SPIFF bonuses: $300 bonus on March 30, 2017, $800 bonus on April 28, 2017, $300 bonus on May 30, 2019, and $600 on July 15, 2019. *Ankeny Aff. (Ex 1), ¶ 8; Pay Records (Ex. 5)*, pp. 4, 7, 58, 61; *Phillips Decl. (Ex. 6), ¶ 6*. She also received a profit-sharing disbursement on December 20, 2018 in the amount of $9,578. *Ankeny Aff. (Ex. 1), ¶ 9; Pay Records (Ex. 5)*, pp. 47; *Phillips Decl. (Ex. 6), ¶ 6*. Accordingly, there is no dispute that Plaintiff's compensation satisfied the first element of the administrative exemption.

### Factor 2 – Plaintiff's Primary Duty was Office Work Related to the Management or General Business Operations of Lighthouse and/or Lighthouse's Customers.

The second factor of the administrative exemption analysis requires the employee's primary duty to be the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers. 29 C.F.R. § 541.200(a)(2). To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished from working on a

manufacturing production line or selling a product in a retail or service establishment. 29 C.F.R. § 541.201(a). This "includes, but is not limited to, work in functional areas such as . . . marketing; . . . human resources; . . . and legal and regulatory compliance." 29 C.F.R. § 541.201(b). Importantly, an "employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers." 29 C.F.R. § 541.201(c). Thus, for example, employees acting as advisers or consultants to their employer's clients or customers may be exempt. *Id.*

Plaintiff's primary duty was office work, *Dkt. 1*, ¶ 24, related to Applicant Harbor, Lighthouse's proprietary applicant tracking system, *Ankeny Aff. (Ex. 1)*, ¶¶ 10–11, 13–16; *Plaintiff's Resumé (Ex. 2)*; *Robinson Decl. (Ex. 4)*, ¶¶ 6–7, 9; *Plaintiff's Job Description (Ex. 9)*; *Collection of Email Correspondence Regarding Essential Duties of Plaintiff's Job (Ex. 7)*, p. 3–4. Applicant Harbor combines the two functional areas of human resource management, particularly as it relates to personnel hiring, and compliance with employment laws and regulatory guidance for Lighthouse clients. *See Ankeny Aff. (Ex. 1)*, ¶¶ 10–11; *Plaintiff's Résumé (Ex. 2)*; *Lighthouse Applicant Harbor Webpage (Ex. 22)*. Therefore, Plaintiff's primary duty related to the management or general business operations of her employer's customers. 29 C.F.R. §§ 541.200(a)(2), 541.201.

On her own initiative, Plaintiff also performed work directly related to the management or business operations of Lighthouse itself. *See id.* In particular, Plaintiff was the "head of marketing" for Lighthouse. *Collection of Email Correspondence Regarding Marketing (Ex. 19)*, p. 2; *see also Ankeny Aff. (Ex. 1)*, ¶ 25; *Robinson Decl. (Ex. 4)*, ¶ 15; *Gay Decl. (Ex. 13)*, ¶ 14. In this capacity, she developed and conducted seminars, engaged in professional networking at human resource management meetings and conferences, oversaw Lighthouse's online presence, was responsible

for print and online advertising, facilitated the redesign of Lighthouse's logo, and drafted client "alerts," *e.g.*, guidance documents pertaining to new OFCCP requirements and regulations, unique to federal contractors. *Collection of Email Correspondence Regarding Marketing,* pp. 1, 5–27; *Akeny Aff. (Ex. 1),* ¶¶ 26–30; *Robinson Decl. (Ex. 4),* ¶¶ 16–18; *Gay Decl (Ex. 13),* ¶¶ 15–17. Accordingly, in this capacity, Plaintiff's duties related directly to the functional area of marketing, and thus the management or general business operations of Lighthouse. *See* 29 C.F.R. § 541.201(b).

Against these facts, it is beyond dispute that Plaintiff's duties satisfied the second factor of the administrative exemption's analysis.

### *Factor 3 – Plaintiff's Primary Duty Included the Exercise of Discretion and Independent Judgment With Respect to Matters of Significance.*

The third component of the administrative exemption's analysis requires that the position's primary duty include the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a)(3). In general, the "exercise of discretion and independent judgment involves the comparison and evaluation of possible courses of conduct, and acting or making decisions after various possibilities have been considered." 29 C.F.R. § 541. 202(a). Implicit in the exercise of independent judgment is the "authority to make an independent choice, free from immediate direction or supervision." 29 C.F.R. § 541.202(c).

Plaintiff exercised substantial discretion and independent judgment with respect to matters of significance in her capacity as Director of Applicant Harbor as well as Lighthouse's "head of marketing." Prior to her lawsuit, Plaintiff represented to the Arkansas Appeal Tribunal that she was "an exempt, salaried employee." *Petition for Appeal to the Appeal Tribunal (Ex. 8),* p. 2. Indeed, she was the "sole person in the company that knew how [Applicant Harbor] worked [and] was managed." *Id.* As such, she "was the sole interface with clients." *Id.* Rather than an employee

who "answer[ed] questions, train[ed] users to use [Lighthouse's] software, and updat[ed] job posting[s]," *Dkt. 1*, ¶ 25, Plaintiff was a "consultant" responsible for Applicant Harbor's "operations, implementation and training," with "expert knowledge in OFCCP regulations and requirements for compliant applicant tracking," and able to provide guidance to [Lighthouse's] federal contractor clients." *Collection of Email Correspondence Regarding Essential Functions of Plaintiff's Job (Ex. 19),* p. 4. She maintained personalized business cards, with her position listed as Director or Applicant Harbor, **Exhibit 24**, *Plaintiff's Business Card*, and in her résumé, Plaintiff described her duties as follows:

- Deliver and effectively communicate to stakeholders, administration and various levels of hiring managers;

- Continuously follow and research DOL-OFCCP and EEOC initiatives in reference to applicant tracking and AAP compliance;

- Provide guidance and support to clients in their recruiting efforts in compliance with OFCCP and EEOC guidelines;

- Develop and manage new account relationships;

- Execute continuation of compliance and system enhancements;

- Deliver and review analysis and reports; and

- Negotiate and complete contracts with third party vendor integrations.

*Plaintiff's Résumé (Ex. 2).*

More importantly, however, are objective indicators and representations of Plaintiff's responsibilities and duties inherent in her position. With respect to the use of the Applicant Harbor software, Plaintiff provided guidance and recommendations to clients, using her independent judgment, in response to specific client inquiries. *Collection of Email Correspondence Regarding Applicant Harbor (Ex. 11)*, pp. 3, 6–10, 18–19, 21–26, 29-30. For example, one client provided

Plaintiff with a job description, and Plaintiff developed "qualifying questions"[12] based on the information provided by the client. *Id.* at p. 11. On another occasion, Plaintiff offered "suggestions on updating [the client's] application template," opining that it should be "much shorter." *Id.* at p. 18. Using her independent judgment, Plaintiff recommended alterations to specific sections of the application to achieve an effective and compliant, yet more concise application. *Id.*

Plaintiff also advised clients as to developing applications and hiring practices that were compliant with OFCCP and EEOC regulations and guidance. *See Collection of Email Correspondence Regarding Legal Compliance (Ex. 12).* She informed clients on the duration of time applicant data must be retained, *id.* at 5, 8; advised clients that engaging in a "pattern" of certain conduct would "show discrimination," *id.* at 6; opined as to why a Lighthouse competitor's "process [was] not at all compliant with EEO or OFCCP compliance regulations," and provided her suggestions to ensure compliance, *id.* at 10; made recommendation to clients based on enforcement and guidelines of governmental regulatory agencies, including the EEOC and the Consumer Financial Protection Bureau, *id.* at 13–14; updated a client's "application template to comply with the new Connecticut salary history ban," *id*. at 15; and researching and providing analysis and recommendations regarding newly enacted state legislation, *id*. at 23–25. If she received a legal inquiry from a client that she did not feel equipped to answer, she sought advice from Lighthouse's legal counsel without prior approval from any superior at Lighthouse, including Ankeny. *See Ankeny Aff. (Ex. 1)*, ¶ 22.

In addition to legal and regulatory compliance advice, Plaintiff provided human resource guidance relating to the recruitment and compliant hiring of qualified personnel. *See Collection of*

---

[12] A "qualifying question" is a question in an application that requires the applicant answer "yes" in order to viewed as basic qualified.

*Email Correspondence Regarding Human Resource Guidance (Ex. 14)*. In an apt example, she diligently edited and revised a client's application, making detailed notes for the client. *Id.* at 6–21. Along those same lines, Plaintiff provided guidance to clients pertaining to posting requirements on state job boards, *see Collection of Email Correspondence Regarding Third Party Communications (Ex. 15)*, pp. 1, 8; and opinions and advice regarding posting applications on online job board, *id.* at 2–7, 9–10.

Not only did Plaintiff utilize her discretion and independent judgment in her communications with Lighthouse clients, she exercised such discretion and judgment in determining with which clients Lighthouse would enter into Applicant Harbor agreements and prices clients pay for Applicant Harbor and related services. *See Ankeny Aff. (Ex. 1)*, ¶¶ 23–24; *Robinson Decl. (Ex. 4)*, ¶¶ 11–14; *Gay Decl. (Ex. 13)*, ¶¶ 10–13; *Applicant Harbor System Services Agreement (Ex. 16); Collection of Email Correspondence Regarding Contracting Authority (Ex. 17); Collection of Email Correspondence Regarding Price Setting (Ex. 18)*.

The foregoing responsibilities and duties directly related to her primary role as Director of Applicant Harbor demonstrate that Plaintiff exercised discretion and independent judgment with respect to matters of significance of Lighthouse's clients. In addition to her role as Director of Applicant Harbor, Plaintiff, on her own initiative, assumed the role of "head of marketing." *Collection of Email Correspondence Regarding Marketing (Ex. 19)*, p. 2; *see also Ankeny Aff. (Ex. 1)*, ¶ 25; *Robinson Decl. (Ex. 4)*, ¶ 15; *Phillips Decl. (Ex. 6)*, ¶ 10; *Gay Decl. (Ex. 13)*, ¶ 14. In her capacity as "head of marketing," Plaintiff:

- Oversaw the creation of Lighthouse's LinkedIn webpage, and sought Applicant Harbor's "integration" with LinkedIn's "new recruiting tool," *Collection of Email Correspondence Regarding Marketing (Ex. 19)*, pp. 1, 8–9;

- Facilitated advertisements in HR Magazine, *id.* at 14–19; *Ankeny Aff. (Ex. 1)*, ¶ 28; *Robinson Decl. (Ex. 4)*, ¶ 16;

- Obtained a company listing on CAHRA's website, *Collection of Email Correspondence Regarding Marketing (Ex. 19)*, pp. 20–23;

- Oversaw the updating of Lighthouse's website, *id.* at 25–26;

- Sent human resource legal compliance "alerts" to clients, alerting them of new directives issued by the Department of Labor and the OFCCP, *id.* at 27; *Ankeny Aff. (Ex. 1)*, ¶ 30; *Plaintiff's Résumé (Ex. 2)*;

- Facilitated the redesign of Lighthouse's logo, *Ankeny Aff. (Ex. 1)*, ¶ 29; *Collection of Email Correspondence Regarding Marketing (Ex. 19)*, p. 11–13; and

- Developed and/or conducted training and seminars pertaining to Applicant Harbor remaining compliant in hiring practices, *Collection of Email Correspondence Regarding Marketing (Ex. 19)*, p. 5.

In performing the above-enumerated marketing duties, Plaintiff operated independently and without immediate supervision for any of her superiors. *Ankeny Aff. (Ex. 1),* ¶ 33; *Robinson Decl. (Ex. 4),* ¶ 20; *Phillips Decl. (Ex. 6),* ¶ 11; *Gay Decl. (Ex. 13),* ¶ 15. She developed marketing strategies and identified marketing opportunities on her own. *Id.* Marketing decisions that had more than incidental monetary impact on Lighthouse was subject to review by Ankeny. *Id.* She would present such marketing opportunities at team meetings that included all Lighthouse employees. *Id.* However, once approved, Plaintiff was responsible for pursuing and implementing the approved marketing decisions. *Id.*

The evidence clearly demonstrates that Plaintiff exercised discretion and independent judgment with respect to significant marketing matters, even though those decisions were occasionally reviewed at a higher level. *See* 29 C.F.R. § 541.202(c) ("The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision. However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level.

Thus, decisions made as a result of the exercise of 'discretion and independent judgment' does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review."). Plaintiff's wide-ranging authority to and practice of conducting Lighthouse marketing is quintessentially indicative of an administratively-exempt employee.

Because Plaintiff had authority to "formulate, affect, interpret, or implement management policies or operating practices[,]" "carrie[d] out major assignments in conducting the operations of the business[,]" "perform[ed] work that affects business operations to a substantial degree," "ha[d] authority to waive or deviate from established policies and procedures without prior approval[,]" "ha[d] authority to negotiate and bind the company on significant matters[,]" "provide[d] consultation or expert advice to management[,]" and was engaged in "planning long- or short-term business objectives[,]" with respect to both Lighthouse, in her capacity a "head of marketing," and Lighthouse's clients, in her capacity as Director of Applicant Harbor, Plaintiff exercised discretion and independent judgment in the performance of her work as Lighthouse's Director of Applicant Harbor. *W&H Div. Field Op. Handbook*, U.S. DEP'T OF LABOR, at § 22(c)(02), *available at* https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/FOH_Ch22.pdf (last accessed Feb. 15, 2020). Federal courts generally find that employees who meet at least two or three of these factors are exercising discretion and independent judgment. *Id.*

There is no genuine dispute as to any material fact sufficient for Plaintiff's Complaint to proceed any further in this litigation. Because Plaintiff was properly classified as an exempt administrative employee, the Court should grant this Motion and enter judgment in Defendants' favor.

### IV.    REQUEST FOR STAY

Defendants respectfully request that the Court stay these proceedings, and withhold the issuance of an initial scheduling order, while this Motion is pending the Court's review. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). The Court should exercise this discretionary authority because Plaintiff's Complaint cannot survive scrutiny under Rule 12(b)(6) or Rule 56(c), and engaging in further discovery will needlessly result in the accumulation of additional and unnecessary attorneys' fees.

### V.    CONCLUSION

There is little need to delay the just and final resolution of this matter, and this Motion presents the Court with two dispositive bases upon which to bring this litigation to swift and proper end. First dismissal is abundantly appropriate under Rule 12(b)(6) because Plaintiff's factual allegations do not permit an inference of more than a possibility of misconduct—she simply asserted legal conclusions couched as facts consistent with the administrative exemption under the FLSA (and in turn, under the AMWA). Alternatively, Plaintiff's execution of a settlement agreement waiving, *inter alia*, her FLSA and AMWA claims for valuable consideration necessitates prompt dismissal of her claims. Even if the Court was not inclined to dismiss Plaintiff's Complaint under Rule 12(b)(6), the interests of justice and judicial economy compel the alternative treatment of this Motion, through the operation of Rule 12(d), as a motion for summary judgment. Under Rule 56(c), the Court has abundant evidence upon which to find that Plaintiff was properly classified as exempt from the FLSA and AMWA's overtime requirements. Consequently, because Defendants have established that there are no material facts susceptible to

genuine dispute and that they are entitled to judgment as a matter of law, this Court should dismiss

Plaintiff's Complaint and award them all just and proper relief to which they are rightfully entitled,

including attorneys' fees.

Respectfully Submitted,

Abtin Mehdizadegan, Ark. Bar No. 2013136
Alexander D. Clark, Ark. Bar No. 2017112
**CROSS, GUNTER, WITHERSPOON**
   **& GALCHUS, P.C.**
500 President Clinton Avenue, Suite 200
Little Rock, Arkansas 72201
Phone: (501) 371-9999
Fax:    (501) 371-0035
Email:  abtin@cgwg.com
        aclark@cgwg.com
