**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**DEBBIE LEE**                                                                                            **PLAINTIFF**

**V.**                                              **NO. 4:20-CV-197 (BSM)**

**LIGHTHOUSE COMPLIANCE SOLUTIONS, INC.**                                    **DEFENDANTS**
**and DAVID ANKENY**

<u>**BRIEF IN SUPPORT OF DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM**</u>

Defendants/Counter-Plaintiffs Lighthouse Compliance Solutions, Inc. (Lighthouse or

Company) and David Ankeny (Ankeny), by and through their undersigned counsel, CROSS,

GUNTER, WITHERSPOON & GALCHUS, P.C., and for their Brief in Support of their Response to

Plaintiff Debbie Lee's Motion to Dismiss Defendants' Counterclaims, state:

## I.      <u>INTRODUCTION AND BACKGROUND</u>

Plaintiff filed her lawsuit against Defendants alleging violations of the overtime provisions

of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.*, and the Arkansas Minimum

Wage Act (AMWA), ARK. CODE ANN. §§ 11-4-201 *et seq. Dkt. 1*, ¶¶ 1, 40, 48. Plaintiff alleges

that she was misclassified as an "exempt" employee for wage and hour purposes, and thus should

have been paid overtime wages pursuant the FLSA and AMWA. *See Dkt. 1*, ¶¶ 22, 38–39, 41, 46–

47, 49. Defendants responded to Plaintiff's Complaint, seeking its dismissal pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can

be granted, or alternatively pursuant to Rules 12(d) and 56(c) because the uncontested facts

demonstrate conclusively that Defendants are entitled to judgment as a matter of law. *See Dkt. 7–*

*9.* Concurrent with its motion seeking dismissal of Plaintiff's Complaint, Defendants filed their

Counterclaim for breach of certain terms and obligations of a Confidential Severance Agreement

(Release Agreement) by and between Defendants and Plaintiff. *See Dkt. 10*. Defendants' counterclaims plead all essential elements of the causes of action and state claims upon which this Court can plausibly grant relief. *See id*.; FED. R. CIV. P. 12(b)(6). Further, given the commonality in the underlying facts relevant to Plaintiff's employment-related claims and Defendants' counterclaims, which also relate to Plaintiff's employment with Lighthouse, this Court may and should exercise supplemental jurisdiction over Defendants' Counterclaim. *See* 28 U.S.C. § 1367. As such, the Court should deny Plaintiff's Motion to Dismiss.

## II.    LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure contends that a court lacks subject matter jurisdiction over a particular claim. In considering a Rule 12(b)(1) motion to dismiss, all factual allegations must be accepted as true and viewed in the light most favorable to the nonmoving party. *Great Rivers Habitat Alliance v. Fed. Emergency Mgmt. Agency*, 615 F.3d 985, 988 (8th Cir. 2010).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a court to dismiss a claim only when it is clear that no relief could be granted under any set of facts that could be proved by the allegations advanced in the complaint (or, in this case, Counterclaim). *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *see also O'Neal v. State Farm Fire & Cas. Co.*, 630 F.3d 1075, 1077 (8th Cir. 2011). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all of the factual allegations and all reasonable inferences must be drawn in favor of the nonmoving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir. 2001). The court does not parse allegations to determine their individual plausibility. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

249376

A claim that states factual allegations that are plausible on their face will withstand a 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 570 (2007)). A claim that has facial plausibility pleads factual content that allows the court to draw the reasonable inference that the counter-defendant is liable for the misconduct alleged. *Id.* The "plausibility standard" is not akin to a "probability requirement." *Id.* (quoting *Twombly*, 550 U.S. at 556). Allegations only need exceed a sheer possibility of the existence of unlawful conduct. *Id.*

## III.   ARGUMENT

### A.   THE EXERCISE OF SUPPLEMENTAL JURISDICTION OVER DEFENDANTS' COUNTERCLAIM IS ABUNDANTLY APPROPRIATE UNDER 28 U.S.C. § 1367.

Plaintiff argues that Defendants' Counterclaim should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. *See Dkt. 14*, pp. 3–8. Specifically, Plaintiff argues that Defendants' counterclaims are not compulsory, *see id.* at 3–6, and she urges the Court to decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367. *Id.* at 6–8. Plaintiff's arguments are unavailing.

A counterclaim is compulsory if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction. FED. R. CIV. P. 13(a)(1). Rule 13(a)—the compulsory counterclaim rule—calls into play supplemental jurisdiction when the claim asserted by the defendant has no independent basis for federal jurisdiction. *See Tullos v. Parks*, 915 F.2d 1192, 1195 (8th Cir. 1990) (citing *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 377 (1978)). Rule 13(b) permits as counterclaims, although not compulsory, "any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim." *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974); FED. R.

CIV. P. 13(b). "Thus, the court may dispose of all claims between the parties in one proceeding whether or not they arose in the 'same transaction.'" *Baker*, 417 U.S. at 469 n.1.

1.    **Defendants' Claims for Breach of Contract for Pursuing the FLSA and AMWA Claims She Waived in Her Release Agreement Are Compulsory Counterclaims.**

In a decision applying Rule 13(a)'s predecessor, the Supreme Court described "transaction" is "a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their *logical relationship*." *Tullos*, 915 F.2d at 1195 (quoting *Moore v. New York Cotton Exch.*, 270 U.S. 593, 610 (1926)) (emphasis in original). As Plaintiff articulates in her Brief, *Dkt. 14*, p. 3, the Eighth Circuit has recognized the "logical relation" test as one of the four that federal courts have applied. *Tullos*, 915 F.2d at 1195. The three remaining tests include:

(1)    Are the issues of fact and law raised by the claim and counterclaim largely the same?

(2)    Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?

(3)    Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?

*Id.* at 1195 n.8. While Plaintiff concludes that Defendants' Counterclaim satisfies none of the foregoing tests, her analysis ignores, and in fact runs contrary to, the assertions in the latter half of her argument that Plaintiff *cannot* waive her rights under either the FLSA or the AMWA as she seemingly does in her Severance Agreement with Defendants. *Dkt. 14*, pp. 11–13.

On October 9, 2019, in exchange for payment of $10,300, less all lawful deductions, and forgiveness of amounts due and owing to Lighthouse in the amount of $8,150.97, Plaintiff:

249376

> forever release[d] and discharge[d] Lighthouse[1] from any and all claims . . . and liabilities she ha[d] or may have had, as of the date of the execution of [the Release] Agreement, arising out of or related to her employment with or separation from Lighthouse, including, but not limited to, claims arising under the Fair Labor Standards Act, . . . the Arkansas Minimum Wage Act, . . . and any other applicable Federal, State, or Local laws or regulations,    . . . and/or claims for attorneys' fees and costs.

*Dkt. 7–23.* Lee agreed that the "consideration she receiv[ed] pursuant to th[e] [Release] Agreement [was] in excess of anything that she [was] otherwise entitled." *Id.* Yet, in Section (III)(B)(1), Plaintiff argues that FLSA and AMWA claims cannot be waived. *Dkt. 14*, pp. 11–13. Specifically, she asserts that "[t]he release of FLSA and AMWA claims alleged by Defendants is invalid as a matter of law and necessitates the dismissal of Defendants' Counterclaim." *Id.* at p. 12.

### ISSUE PRECLUSION (RES JUDICATA) WOULD BAR A SUBSEQUENT ACTION

Assuming *arguendo* Defendants' Counterclaim is dismissed pursuant to FED. R. CIV. P. 12(b)(1) and Plaintiff prevails in her action against Defendants, *see Dkt. 1*, any subsequent action by Defendants to enforce their contractual rights will be barred by collateral estoppel or issue preclusion, which is encompassed in the compulsory counterclaim "res judicata test."[2] Collateral estoppel precludes the re-litigation of issues between the same parties in any future proceedings when an issue of ultimate fact has once been determined by a valid and final judgment. *Carwell Elevator Co. v. Leathers*, 352 Ark. 381, 389, 101 S.W.3d 211, 217 (2003) (quoting *State v.*

---

[1] The Release Agreement defined "Lighthouse" as Lighthouse "and its related entities, agents, **officers**, employees, insurers, attorneys, and associates." *Dkt. 7–23*. Thus, the Release Agreement is equally applicable to Ankeny, as President of Lighthouse, as it is to Lighthouse itself.

[2] "The concept of *res judicata* has two facets, one being issue preclusion and the other claim preclusion." *Carwell Elevator Co. v. Leathers*, 352 Ark. 381, 388, 101 S.W.3d 211, 216 (2003); *see also Lane v. Peterson*, 899 F.3d 737, 741 n.3 (8th Cir. 1990) (While the term " 'res judicata' is now often used in a narrower sense, as referring only to claim preclusion," "[i]n its generic sense 'res judicata' is a broad term that encompasses both issue preclusion and claim preclusion.").

249376

*Thompson*, 343 Ark. 135, 139–40, 34 S.W.3d 33, 36 (2000)). Collateral estoppel requires that: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) the issue must have been determined by a final and valid judgment; and (4) the determination must have been essential to the judgment. *Id.*

First, the issue of the validity and enforceability of Plaintiff's FLSA and AMWA releases is presently at issue in this litigation. Defendants raise her release of all FLSA and AMWA claims against them as a defense to both claims raised in her Complaint. *See Dkt. 8*, ARG 15–17. The same issue will necessarily arise in any subsequent action brought by Defendants to enforce their contractual rights because the issue is determinative. If this Court rejects the validity and/or enforceability of Plaintiff's FLSA and AMWA release of claims, Defendants cannot raise the issue as the underlying basis for two of its breach of contract claims—*i.e.*, bringing suit for purported violations of the FLSA and AMWA in direct contravention of her contractual obligation. *See Dkt. 7–23*.

Second, "actually litigated" means that the "issue was raised in the pleadings, or otherwise, that the defendant had a full and fair opportunity to be heard, and that a decision was rendered on the issue." *Powell v. Lane*, 375 Ark. 178, 186, 289 S.W.3d 440, 445 (2008). Defendants have asserted Plaintiff's release of her FLSA and AMWA claims as a complete bar to Plaintiff's Complaint. *See Dkt. 8*, ARG 15–17. Defendants do not intend to abandon the issue of the validity and enforceability of either Plaintiff's FLSA or AMWA waiver of claims. Therefore, it is illogical to presuppose these issues will not be "actually litigated." *See id.*

Third, unless Plaintiff intends to voluntarily dismiss her lawsuit, there is no logical reason to surmise that it will not culminate in a final and valid judgment. *See Carwell*, 352 Ark. at 389, 101 S.W.3d at 217. Fourth, resolution of the issue is essential to any judgment rendered by this

Court. *See id.* The validity and enforceability of Plaintiff's FLSA and AMWA post-employment settlement is a determinative issue—if valid and enforceable, her claims will be dismissed, concluding the litigation. Indeed, even "[a] guilty plea or a default judgment may satisfy the requirement of collateral estoppel where the issue was essential to the judgment and was properly raised and decided by the action." *Powell*, 375 Ark. at 186, 289 S.W.3d at 445.

The issue of the validity and enforceability of Plaintiff's release of any of her FLSA and AMWA claims against Defendants will necessarily be at issue in the event Defendants are constrained to seek relief for their breach of contract claims outside of the present litigation. However, re-litigation of the validity and enforceability of Plaintiff's FLSA and AMWA release of claims will be precluded in the any future proceeding by the doctrine of collateral estoppel. Accordingly, Defendants' Counterclaim, specifically the causes of action related to the issue of Plaintiff's waiver of her FLSA and AMWA claims, are compulsory, and Plaintiff's Motion to Dismiss these claims should be denied.[3]

### THE PROHIBITION ON THE COLLATERAL ATTACK OF A JUDGMENT WOULD BAR A SUBSEQUENT ACTION

Similarly, assuming, *arguendo*, Defendants' FLSA- and AMWA-related counterclaims are dismissed pursuant to FED. R. CIV. P. 12(b)(1) and Plaintiff prevails in her action against Defendants, *see Dkt. 1*, any subsequent action by Defendants to enforce their contractual rights will be barred as an impermissible collateral attack on this Court's judgment. A "direct attack" on a judgment is an "attempt to reform or vacate it is a suit brought in the same action and in the same

---

[3] Defendants recognize that there is a distinction between Plaintiff's FLSA and AMWA claims, and, thus, a distinction between the validity and enforceability of her release of FLSA claims and release of AMWA claims. However, Plaintiff makes no effort to differentiate between the two claims; and, indeed, treats them as identical for purposes of her Motion to Dismiss, *see Dkt. 14*, pp. 4–13. As explained below, in Section (III)(B) of this Response, that assumption is inherently flawed.

court for that purpose." *Rose v. Harbor East, Inc.*, 2013 Ark. 496, at *6, 430 S.W.3d 773, 777

(quoting *Hooper v. Wist*, 138 Ark. 289, 294, 211 S.W. 143, 145 (1919)). By contrast, a "collateral

attack" is "any proceeding in which the integrity of a judgment is challenged, except those made

in the action wherein the judgment is rendered, or by appeal, and except suits brought to obtain

decrees declaring judgments to be void *ab initio*." *Id.* The Arkansas Supreme Court has explained

further that:

> [t]he distinction between a direct and collateral attack upon a judgment is
> sometimes based upon the purposes of the proceeding or action in which
> the attack is made. Under this distinction, an attack is regarded as direct
> where the proceeding in which it is made is brought for the purposes of
> impeaching or overturning the judgment, and as collateral if made in any
> manner other than by a proceeding the very purpose of which is to impeach
> or overturn the judgment.

*Id.* (quoting *Brooks v. Baker*, 208 Ark. 654, 661, 187 S.W.2d 169, 172 (1945)).

While Defendants' Counterclaim seeks, *inter alia*, damages and an injunction stemming

from Plaintiff's release of her FLSA and AMWA, *see Dkt. 10*, ¶¶ 40–61, the same release has been

asserted as a basis to dismiss Plaintiff's Complaint, *see Dkt. 8*, ARG 15–17. Absent resolution in

this Court, Defendants must file a separate action in the Circuit Court of Pulaski County, Arkansas

to pursue their breach of contract claims. However, to the extent Plaintiff is awarded any relief in

her lawsuit for violation(s) of the FLSA and the AMWA, to which Defendants expressly deny she

is entitled, Defendants' attempt to enforce their breach of contract claims based on FLSA and

AMWA waiver will be an impermissible collateral attack on this Court's final judgment on the

merits. *See Rose*, 2013 Ark. 496, at *6–7, 430 S.W.3d at 777–78.

While not expressly defined as a "test" to determine whether a counterclaim is compulsory,

*see Tullos*, 915 F.2d at 1195 n.8, the rationale to classify counterclaims that would be subject to

preclusion by res judicata is equally applicable to claims that would be estopped by collateral

attack, *compare Rose*, 2013 Ark. 496, at *6–7, 430 S.W.3d at 777–78 (collateral attack) *and Carwell*, 352 Ark. at 388–89, 101 S.W.3d at 21–17 (res judicata). Accordingly, Defendants' Counterclaim, in particular the causes of action related to the issue of Plaintiff's waiver of her FLSA and AMWA claims, are compulsory, and Plaintiff's Motion to Dismiss these claims should be denied.

### THERE IS A LOGICAL RELATIONSHIP BETWEEN DEFENDANTS' BREACH OF CONTRACT CLAIMS RELATED TO PLAINTIFF'S FLSA AND AMWA WAIVER AND PLAINTIFF'S CLAIMS ASSERTED IN HER UNDERLYING COMPLAINT

A counterclaim may also be compulsory under Rule 13(a) if there is any logical relation between the claim and the counterclaim. *See Tullos*, 915 F.2d at 1195; *see also Thompson v. Bank of New York Mellon Trust Co.*, 2016 WL 3511599, at *7 (E.D. Ark. Mar. 31, 2016). According to Plaintiff, there is absolutely no logical relationship because "Defendants' counterclaims have nothing to do with the job duties Plaintiff performed, the amount that Plaintiff worked and how much Plaintiff was paid, which is the central focus on Plaintiff's claims against Defendants." *Dkt. 14*, p. 6. However, there is no indication, and Plaintiff provides no rationale, as to why the "logical relation" test should be construed so narrowly. It shouldn't.

During her lengthy employment with Lighthouse, Plaintiff never disputed or made any suggestion that her status as exempt under the FLSA and AMWA was in error. After culminating her employment with a number of years of exceedingly poor performance, engaging in policy violations, and insubordination, she was ultimately terminated. She signed the Release Agreement, which, *inter alia*, released any FLSA and AMWA claims against Defendants, and proscribed Plaintiff from making disparaging remarks about Lighthouse or Ankeny and soliciting Lighthouse clients for employment or work. *See Dkt. 7–23.* After executing the Release Agreement, Defendants contend that Plaintiff made disparaging remarks about Defendants and solicited

9

Lighthouse clients in a manner specifically prohibited by the Release Agreement. *Dkt. 10*, ¶¶ 22–39. Plaintiff thereafter sued Defendants for violation of provisions of FLSA and AMWA, *see Dkt. 1*—claims she specifically waived in the Release Agreement. *See Dkt. 7–23*, ¶ 7. Not only is her lawsuit barred by her previous waiver of claims for which she now seeks relief, it is a breach of the Release Agreement, entitling Defendants to pursue remedies thereunder. *See Dkt. 7–23*. Contrary to Plaintiff's superficial analysis, *this* lawsuit is the most logical and efficient forum in which to resolve all of Defendants' counterclaims. Defendants' counterclaims arose out of the same series of circumstances that underlie Plaintiff's Complaint. *See Tullos*, 915 F.2d at 1195 ("transaction" is "a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their *logical relationship*.").

Rather than approaching the "logical relation" test with the liberality and logic encouraged in *Tullos*, Plaintiff parses each allegation in her Complaint vis-à-vis Defendants' Counterclaim in an effort to accentuate each dissimilarity. As the simplified timeline above demonstrates, *all* counterclaims arise out of the same series of occurrences, and there is a logical relationship between the claims in Plaintiff's Complaint and Defendants' counterclaims. Therefore, Defendants' Counterclaim is compulsory under the "logical relation" test, and therefore, the Court should deny Plaintiff's Motion to Dismiss.

### 2.   All Counterclaims Asserted By Defendants Are Appropriate Permissive Counterclaims Pursuant to Rule 13(b) of the Federal Rules of Civil Procedure.

Even if some of Defendants' counterclaims are not compulsory, *all* counterclaims are valid permissive counterclaims over which this Court should exercise its supplemental jurisdiction. *See* FED. R. CIV. P. 13(b) ("A pleading may state as a counterclaim against an opposing party any claim that is not compulsory."). Contrary to Plaintiff's arguments, "[t]he FLSA does not address

counterclaims." *Vire v. Entergy Operations, Inc.*, 2016 WL 10576708, at *2 (E.D. Ark. July 15, 2016) (allowing unrelated unjust enrichment claim). "Federal law does not prohibit counterclaims, although many courts have struggled to determine whether there is supplemental jurisdiction to hear them. The statute does not state that unjust enrichment cannot be alleged in an FLSA case, and thus, it is not prohibited as a matter of law." *Id.* (internal citations omitted). Similarly, the FLSA does *not* prohibit breach of contract counterclaims, and thus, Defendants' claims are not prohibited as a matter of law. *See id.* Accordingly, Plaintiff's attempt to dismiss Defendants' counterclaims on jurisdictional grounds should be denied wholesale.

**B.    DEFENDANTS' COUNTERCLAIMS SET FORTH PLAUSIBLE CLAIMS FOR RELIEF SUFFICIENT TO WITHSTAND PLAINTIFF'S REQUEST TO DISMISS UNDER RULE 12(b)(6).**

Not only is Defendants' Counterclaim jurisdictionally supported, it sets forth a plausible claim for relief pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, which thus requires this Court to deny Plaintiff's motion to dismiss for failure to state a claim under Rule 12(b)(6). As stated above, Rule 12(b)(6) authorizes a court to dismiss a claim only when it is clear, after accepting as true all factual allegations and drawing all reasonable inferences in favor of the nonmoving party, that there are no set of facts that could be proved by the allegations advanced in the pleading. *See Neitzke*, 490 U.S. at 327 (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *see also O'Neal v. State Farm Fire & Cas. Co.*, 630 F.3d 1075, 1077 (8th Cir. 2011); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir. 2001). The "plausibility standard" is not akin to a "probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 556 (2007)). Allegations only need to exceed a sheer possibility of the existence of unlawful conduct. *Id.*

249376

Under Arkansas law, the essential elements of a contract are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations. *Stewart v. Combs*, 368 Ark. 121, 125–26, 243 S.W.3d 294, 298 (2006). To state a cause of action for breach of contract, "the complaint need only assert the existence of an enforceable contract between the plaintiff and defendant, the obligation of the defendant thereunder, a violation by the defendant, and damages resulting to the plaintiff from the breach." *Smith v. Eisen*, 97 Ark. App. 130, 139, 245 S.W.3d 160, 168–69 (2006) (citing *Rabalaias v. Barnett*, 284 Ark. 527, 683 S.W.2d 919 (1985)). With respect to the breach of contract claims stemming from Plaintiff's disparaging remarks and solicitation for employment, *Dkt. 10, ¶¶ 22–39*, Plaintiff contends that Defendants (1) failed to factually describe the conduct violative of the agreement; and (2) allegations that they were damaged by Plaintiff's breach are "conclusory." *Dkt. 14*, 9–11. Regarding Defendants' claims for breach of contract stemming from Plaintiff's lawsuit asserting claims for relief under the FLSA and the AMWA, *Dkt. 10*, ¶¶ 22–39, she asserts that these claims are "invalid as a matter of law." *Dkt. 14*, p. 11–13. Plaintiff is mistaken.

### 1. Defendants' Counterclaims Regarding Plaintiff's Disparaging Remarks and Solicitation of Lighthouse Clients Allege Ample Factual Content to Assert a Plausible Claim for Relief.

Plaintiff makes no allegation that her underlying obligations to refrain from making disparaging remarks about Defendants and soliciting employment from Lighthouse clients are invalid or unenforceable. Indeed, she concedes that she and Defendants are parties to a valid, enforceable agreement. She only contends that Defendants have insufficiently pleaded a breach of contract with respect to these two causes of action.

First, Plaintiff complains that "Defendants fail[] to identify or described [sic] any disparaging remarks made by Plaintiff," *Dkt. 14*, p. 10, and similarly, "make no factual allegations

establishing a breach" stemming from Plaintiff's solicitation of Lighthouse clients. *Id.* at 10–11. Otherwise, Plaintiff asserts that Defendants' allegations are "conclusory." *Id.* However, Defendants specifically allege that Plaintiff: (1) "made disparaging and/or inappropriate remarks about Lighthouse and/or its owners and officers," and (2) "called on, sought the employ, and/or sought to perform services for clients and customers of Lighthouse." *Dkt. 10*, ¶¶ 23, 34. By offering no refutation of the validity of the particular underlying contractual terms, Plaintiff implicitly admits that such conduct is violative of her obligations under the Release Agreement. Accordingly, Defendants' factual allegations establish the existence of an obligation and a violation by Plaintiff. *See Eisen*, 97 Ark. App. at 139, 245 S.W.3d at 168–69; *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1129 (8th Cir. 2012) (citing *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009)) (in considering a motion to dismiss, "the question is whether [the pleader] has adequately asserted facts (as contrasted with naked legal conclusion) to support his claims. Evidence is not required because 'on a motion to dismiss, inferences are to be drawn in favor of the non-moving party. *Twombly* and *Iqbal* did not change this fundamental tenet. . . .'").

Plaintiff miscomprehends the nature of a conclusory allegation. Indeed, Defendants' allegations are specific to the factual circumstances Defendants have alleged to exist. Plaintiff seeks to impose on Defendants a wholly unrealistic pleading standard—one that would certainly doom her Complaint's allegations—that requires them to establish the who, what, when, where, why and how of their claims. However, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *accord Braden*, 588 F.3d at 595. Defendants' allegations set forth a plausible claim for relief and provide Plaintiff with fair notice of their claims and the grounds upon which they rest—certainly more substance than the vague generalities

outlined in Plaintiff's own Complaint. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556); *Erickson*, 551 U.S. at 93.

Second, Plaintiff seeks dismissal because Defendants "failed to plead any facts establishing the damages element . . ." of the breach of contract claims. *Dkt. 14,* pp. 10–11. Specifically, Plaintiff contends that Defendants' allegations that they were damaged by Plaintiff's conduct is the type of "conclusory allegation" that is insufficient under Rule 12(b)(6). However, Plaintiff disregards the immediately subsequent allegation that Defendants "seek damages in an amount of $18,450.97, the sum agreed to under Paragraph 7 of the [Release] Agreement, and, additionally, any further damages established by [Defendants]." *Dkt. 10*, ¶¶ 31, 38; *see also Dkt. 7–23.*

In Arkansas, it is "settled" law that "where damages for breach of a contract are by their very nature uncertain and difficult to determine, the amount to be paid, in the event there is a breach, may be stipulated to by the parties." *Phillips v. Ben M. Hogan Co., Inc.*, 267 Ark. 1104, 1108, 594 S.W.2d 39, 41 (Ark. App. 1980). It is further "well settled" that a contract will be

> construed as properly stipulating for liquidated damages where, from a prospective view of the contract, it appears (1) that the parties contemplated that damages would flow from a failure to perform the contract; (2) that such damages would be indeterminate to ascertain; and (3) that the sum bears some reasonable proportion to the damages which the parties contemplated might flow from a failure to perform the contract.

*Alley v. Rodgers*, 269 Ark. 262, 264, 599 S.W.2d 739, 741 (Ark. 1980). As the law in Arkansas permits such damages, Defendants' allegations are unquestionably sufficient at the pleading stage to state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

Nevertheless, it is evident from the provisions of the Release Agreement—which Plaintiff has not alleged is invalid—that the Parties contemplated damages would flow from a failure to perform under the Agreement and would be difficult to ascertain. *See Dkt. 7–23,* ¶ 7; *Dkt. 10*, ¶¶

14

31, 38; *Alley*, 269 Ark. at 264, 599 S.W. at 741. The "damages" agreed to under the contract are $18,450.97—the amount Plaintiff received as consideration under the Release Agreement, s*ee Dkt. 7–23*, ¶¶ 1, 7; *Dkt. 10*, ¶¶ 31, 38, which are certainly a reasonable estimation of damages flowing from Plaintiff's breach. *See Alley*, 269 Ark. at 264, 599 S.W. at 741.

Plaintiff's protestations notwithstanding, Defendants have pleaded ample factual content to adequately allege the "damages" element of their breach of contract claims. Defendants' allegations with respect to damages are unequivocally sufficient to state a claim upon which relief can be granted. Therefore, Plaintiff's Rule 12(b)(6) motion to dismiss Defendants' breach of contract claims stemming from Plaintiff's disparaging remarks and solicitation of Lighthouse clients must be denied.

### 2. Defendants' Counterclaims Stemming From Plaintiff Seeking Relief for Purported FLSA and AMWA Violations State a Plausible Claim for Relief Because the Release of Her FLSA and AMWA Claims Are Not Precluded As A Matter of Law.

In spite of Plaintiff's specific agreement to "forever release and discharge [Defendants] from [*inter alia*], claims arising under the Fair Labor Standards Act [and] the Arkansas Minimum Wage Act" in exchange for consideration she acknowledged was "in excess of anything that she [was] otherwise entitled," *Dkt. 7–23*, ¶ 2, she presently seeks relief for purported violations of the FLSA and the AMWA arising out of her employment with Lighthouse. *See Dkt. 1*, ¶ 1. According to Plaintiff, "[t]his claim is fatally flawed and must be dismissed." *Dkt. 14*, p. 11.

In support of dismissal of the FLSA-based counterclaim, Plaintiff perfunctorily represents that, in *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945), "[t]he U.S. Supreme Court [] made clear that the FLSA does not permit the private waiver of FLSA claims." *Dkt. 14*, p. 11.[4] However,

---

[4] Plaintiff attributes the following quotation to the Supreme Court in *Brooklyn Savings Bank*: "Because 'there are often great inequalities in bargaining power between employers and

249376

the *Brooklyn Savings Bank* decision stands for no such proposition. *Brooklyn Savings Bank* recognizes the relatively uncontroversial point "[n]o one can doubt but that to allow waiver of statutory minimum wages by agreement would nullify the purposes of the [FLSA]." 324 U.S. at 707. Importantly, the facts before the Supreme Court included that "both parties knew more than $500.00 was due * * * at the time the petitioner tendered $500 to the respondent in return for a comprehensive release covering all of the respondent's claims against the petitioner employer." *Id.* at 713 (internal quotations omitted). Thus, the Supreme Court concluded the "employer and employee attempted by means of that release to waive the right to the basic statutory minimum as well as the right to liquidated damages. This attempted release and waiver of rights under the Act was absolutely void." *Id.* at 713–14. Indeed, the Supreme Court specifically stated that:

> Our decision of the issues raised in [the underlying cases] has not necessitated a determination of what limitation, if any, Section 16(b) of the Act places on the validity of agreements between an employer and employee to settle claims arising under the Act of the settlement is made as the result of a bona fide dispute between the two parties, in consideration of a bona fide compromise and settlement. Neither of the above mentioned cases presented such issues for our consideration.

*Brooklyn Savings Bank*, 324 U.S. at 714. In *Brooklyn Savings Bank*, the employer *knew* the employee was entitled to compensation under the FLSA that the employer did not previously pay to the employee. *Id.* at 713. The employer attempted to obtain a release where there was no bona

---

employees, Congress made the FLSA's provisions mandatory; thus, the provisions are not subject to negotiation or bargaining between the employers and the employees.'" *Dkt. 14*, p. 11. However, this quotation is directly from *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982), which merely referenced *Brooklyn Savings Bank*. While lacking the authority Plaintiff suggests by her attribution, the citation is not determinative. Indeed, the issue is not whether Plaintiff may waive her right to be paid minimum and overtime wages—it is whether her FLSA *claims* can be waived in a private, post-employment settlement in which Plaintiff acknowledged that she received consideration "in excess of anything that she [was] otherwise entitled." *Dkt. 7–23, ¶* 2.

fide dispute as to the wages due under the FLSA. *Id.* Such a waiver, the Supreme Court held, is in effect a waiver to receive minimum wages and liquidated damages under the FLSA. *Id.* at 714.

Defendants unequivocally have and continue to maintain that Plaintiff was exempt from the minimum wage and maximum hours provisions of the FLSA, *see e.g. Dkt. 8*, ARG 11–15, 17–27, and Plaintiff acknowledged that "the consideration she [] reciev[ed] pursuant to th[e] [Release] Agreement [was] in excess of anything to which she [was] otherwise entitled." *Dkt. 7–23*, ¶ 2. Plaintiff's citation to the Eleventh Circuit's decision in *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350 (11th Cir. 1982) is not determinative here, as the Eighth Circuit acknowledged a circuit split as to whether a private settlement of FLSA is permissible in *Melgar v. OK Foods*, 902 F.3d 775, 779 (8th Cir. 2018), but declined to weigh in on it. More recently, the Eighth Circuit again notably stopped short of deciding whether private settlements relating to FLSA claims require court approval in holding "any authority for judicial approval of FLSA settlements in 29 U.S.C. § 216 does not extend to review of settled attorney fees." *See Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019). Accordingly, Defendants maintain that Plaintiff validly released her claims under the FLSA, and, in bringing her FLSA claim against Defendants, she breached her Release Agreement.

Even if the Court finds that Plaintiff's FLSA waiver is invalid or unenforceable, thereby necessitating dismissal of Defendants' FLSA counterclaim, Plaintiff's rationale *does not* extend to her AMWA waiver. Plaintiff spends three paragraphs citing federal case law applicable solely to the FLSA,[5] and draws the wholly unsupported conclusion that "[t]he release of FLSA and AMWA claims alleged by Defendants is invalid as a matter of law and necessitates the dismissal of

---

[5] By recognizing that Plaintiff cites to federal case law applicable to the FLSA, Defendants *do not* implicitly admit such case law is apposite to the circumstances of Plaintiff's release of her FLSA claims.

249376

Defendants' Counterclaim." *Dkt. 14*, pp. 11–12. Plaintiff cites to no authority—persuasive or otherwise—that hold or suggest that Plaintiff's AMWA release is invalid as a matter of law.

Defendants recognize that, generally, the Court "may rely on the interpretations of the U.S. Department of Labor and federal precedent established under the Fair Labor Standards Act in interpreting and applying the provisions of [the AMWA] . . . except to the extent a different interpretation is clearly required." ARK. ADMIN. CODE § 010.14.1-112; *see also Lyons v. ConAgra Foods Packaged Foods, LLC*, 2013 WL 12304019, at *3 (E.D. Ark. Oct. 31, 2013) ("The AMWA has been interpreted to impose the same overtime requirements as the FLSA."). At the same time, there is no statutory mandate or Eighth Circuit precedent that requires court approval of the Parties' private Release Agreement. *See Melgar*, 902 F.3d at 779 (acknowledging circuit split as to whether a private settlement of FLSA is permissible, but declining to weigh in on it). Therefore, there is no authoritative basis in the Eighth Circuit by which to find that a release of AMWA claims is invalid as a matter of law.

Even under Eleventh Circuit precedent, FLSA claims can indeed be settled or compromised where: (1) under "section 216(c), . . . an employee who accepts [] payment [of unpaid wages supervised by the Secretary [of Labor] thereby waives his right to bring suit for both the unpaid wages and for liquidated damages;" and (2) upon a "district court [] enter[ing] a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores*, 679 F.2d at 1353. In this jurisdiction, many courts have declined approving FLSA settlement agreements, finding that no approval is necessary for individual, non-class-based claims. *See McCartney v. Bailey & Thompson Tax and Accounting, P.A. LTD*, Case No. 4:14-CV-561, at *Dkt. 12* (E.D. Ark. Feb. 19, 2015) (citing *Fascio v. Madison Health & Rehab LLC*, No. 4:12CV00600 (E.D. Ark. June 30, 2014) (in order finding arms' length compromise of FLSA for overtime did not require court

approval, the court noted that "no statutory mandate or Eighth Circuit decision [] requires court approval of the parties' private settlement agreement."). Even still, courts should only rely FLSA precedent in "interpreting and applying **provisions of the [AMWA]**." ARK. ADMIN. CODE § 010.14.1-112. Unlike the FLSA, there is no provision in the AMWA that limits a party's ability to settle a claim. Thus, no rationale exists to extend the interpretation of the FLSA's provisions to apply to the AMWA where there is no analogous provision in the AMWA. The provisions located in 29 C.F.R. § 216(b) and (c), *see Lynn's Food Stores*, 679 F.2d at 1353 (relying on sections 216(b) and 216(c) of the FLSA), or analogous provisions do no appear in the AMWA. Accordingly, any waiver analysis in which the Eleventh Circuit engaged should not be extended to the AMWA. Therefore, in the event that Plaintiff did not effectively waive her FLSA claims, she *did* effectively waive her AMWA claim.

Plaintiff's Motion to Dismiss does not engage in any reasoned analysis of the validity of her AMWA waiver. She simply presupposes, without any basis, that any rationale a court has engaged in with respect to the validity of an FLSA waiver is equally applicable to the validity of an AMWA waiver. There is no support for this proposition in the AMWA's statutory language. Consequently, Plaintiff's AMWA release is valid, and Defendants have stated a plausible claim for relief in connection with Plaintiff's breach of the Release Agreement. Accordingly, Plaintiff's Motion to Dismiss Defendants' FLSA and AMWA counterclaim must be denied.

### 3.   Defendants Are Entitled to Injunctive Relief Pursuant to Paragraph 7 of the Release Agreement.

Plaintiff alleges that Defendants' "claim for injunctive relief is based on [Defendants'] claim of breach of the alleged release provision of the [Release] Agreement. Because that claim fails as a matter of law . . ., Defendants' injunction claims must also fail." *Dkt. 14*, p. 13. As set forth above, Plaintiff's cursory assertions that Defendants' claims fail as a matter of law are

249376

without any merit. Indeed, Defendants have pleaded, in accordance with Rule 8(a), plausible claims for relief over which this Court has jurisdiction. Pursuant to the Release Agreement, Defendants are entitled to injunctive relief for violation of any of its provisions. *Dkt. 7–23*, ¶ 7; *see also Dkt. 10*, ¶ 59–60. Accordingly, Plaintiff should be enjoined from pursuing her lawsuit brought under the FLSA and AMWA, and Plaintiff's motion to dismiss Defendants' right to injunctive relief should be denied.

## IV.   CONCLUSION

Defendants' Counterclaim asserts causes of action for breach of contract that are jurisdictionally grounded and which state a plausible claim for relief pursuant to FED. R. CIV. P. 8(a). Defendants' claims arising out of Plaintiff's release of her FLSA and AMWA claims are compulsory under FED. R. CIV. P. 13(a), and must be asserted. The remainder of their counterclaims are permissive, authorized by FED. R. CIV. P. 13(b), and not prohibited as counterclaims. Defendants' breach of contract claims arising out of Plaintiff's disparaging remarks and solicitation of Lighthouse clients, contain ample factual content to state a claim for relief. Further, Defendants' counterclaims related to Plaintiff's FLSA and AMWA waivers state a plausible claim for relief because, despite Plaintiff's misinterpretation of federal precedent and wholly unsupported assertions, her release of such claims is not prohibited as a matter of law. Because Plaintiff's release of the FLSA and AMWA is valid and enforceable, so too is Defendants' request for injunctive relief. Accordingly, Plaintiff's Motion to Dismiss should be denied in its entirety.

Respectfully Submitted,

Abtin Mehdizadegan, Ark. Bar No. 2013136
Alexander D. Clark, Ark. Bar No. 2017112
CROSS, GUNTER, WITHERSPOON
   & GALCHUS, P.C.

249376

500 President Clinton Avenue, Suite 200
Little Rock, Arkansas 72201
Phone: (501) 371-9999
Fax:    (501) 371-0035
Email: abtin@cgwg.com
          aclark@cgwg.com

249376